hMAX N. TOBIAS, JR., Judge.
Virginia Pierce Sporl and Maunsel W. Hickey, testamentary co-executors of the Succession of Cyprian A. Sporl, Jr., seek appellate review of a trial court judgment refusing to homologate a proposed tableau of distribution and for authority to redeem *733 shares of stock. For the following reasons, we affirm.
Cyprian A. Sporl, Jr. (the “decedent”) departed this life on 31 March 1999. He died testate, leaving a testament in statutory form, a codicil in statutory form, and four olographic codicils (collectively hereinafter referred to as the “testament”). The testament named Virginia Pierce Sporl (“Virginia”), the decedent’s wife and now widow, Maunsel W. Hickey (“Maunsel”), and Harold D. Sporl, Jr. (“Harold”) as co-executors of the succession to serve without bond. The co-executors qualified as co-executors and letters testamentary were issued to them on 19 April 1999.
Among the assets of the succession, as shown by the sworn descriptive list, were 45,934 shares of stock of The Sporl Company (hereinafter, the “company”), a close corporation of which the decedent was the majority shareholder prior to his |gdeath. Harold was left a particular legacy of 1,700 shares of the company, and on 8 March 2000, on the joint petition of the co-executors, Harold was placed in possession of the 1,700 shares. After Harold obtained these shares, the decedent’s succession was no longer a majority shareholder of the company. We note that the petition for partial possession of these 1,700 shares alleges that the stock of the company had a value of $62.5785 per share. Thereafter, on 12 December 2000, Harold resigned as a co-executor.
On 13 February 2003, the co-executors filed a sworn descriptive list of succession assets showing estate assets totaling $3,857,178.00. Except for various provisional accountings filed by the succession representatives that list some debts and allege that the succession is solvent, the record fails to disclose the total debts of the succession. Of course, the proposed tableau at issue alleges additional debts of the succession that need to be paid.
In pertinent part, the decedent’s last will and testament as amended by a codicil dated 27 January 1998 reads as follows:
III.
I bequeath to Sandra Lee Ferrel the naked ownership of the balance of my estate, other than stock of the Sporl Company, subject to usufruct for life in favor of my wife, Virginia Pierce Sporl, who shall have the right to dispose of nonconsumable property and replace it with such property as she see fit, to be subject to the provisions of law applicable thereto.
:¡; ij;
IV.
The bequests stated in above paragraph III shall be free of all estate and inheritance taxes also; all death 13taxes, including those due by the estate of my wife by reason of election of the marital deduction by my estate, and all funeral and administrative expenses shall be borne by the hereinbelow bequest.
I bequeath the balance of my estate that is, my stock of The Sporl Company, in trust subject to the following provisions:
* * *
C. My wife, Virginia Pierce Sporl (and then her estate), shall be income beneficiary of and shall be entitled to the income produced by the trust property during her lifetime, including income accrued at her death, to be distributed at least monthly. The trustees may invade and distribute principal to the income beneficiary at such times and in such amounts as the trustees, in their sole discretion, deem necessary for the health, *734 maintenance, support and welfare of the income beneficiary in accordance with the beneficiary’s accustomed standard of living at the time of my death.
Virginia is the second wife of the decedent. The decedent’s assets are his separate property and the stock of the company is his separate property. The decedent’s testament contains the following provision relating to the trustees of the trust:
The trustees shall be Virginia Pierce Sporl, Harold D. Sporl, Jr., and Edward F. Sporl, Jr., jointly, to serve without fee. In the event of the incapacity or refusal of Harold D. Sporl, Jr., I name Henry Schonberg and Patricia Sporl Schonberg, jointly, in his place, in like manner. Otherwise, if any trustee cannot serve for any reason and only one trustee remain, the successor trustee shall be selected in each instance by the surviving trustee, to serve without fee if a legatee under this Will....
Codicils to the testament changed the trustees to name Henry Schonberg, in place of Edward F. Sporl, Jr. as a trustee, and to provide that “in the event that Virginia |4Pierce Sporl be unable or unwilling to serve as trustee, then Sandra Ferrel shall serve in her place,.... ”
For many years, the company paid a dividend to its shareholders. From 1983 through 1998, these annual dividends ranged from a high of $5.40 per share to a low of $4.00 per share, but most frequently (and in the later years) $4.50 per share. In 1999, the company paid a dividend of $3.50 per share. In January 2000, the company paid a dividend of fifty cents per share. Since that date, no dividend has been paid. We note that the cessation of dividends coincides with Harold’s obtaining of the 1,700 shares in the company.
It is alleged that the decedent and Virginia obtained most of the funds that they lived on from the dividends of the company. Additionally, it is alleged that Virginia’s health has declined and that she has a need for funds to pay the expenses related thereto.
On 18 February 2003, the co-executors filed a proposed tableau of distribution listing debts that needed to be paid and seeking authority to have the company redeem the stock of the decedent in the company or for authority to sell the stock at private sale. Harold, as a trustee-to-be of the trust established by the decedent’s will, objected.[1] A hearing was held on the matter on 14 March 2003, and on 26 March 2003, the trial court issued a judgment refusing to homologate the tableau or to authorize the redemption of the stock in the company. The judgment is silent with respect to the co-executors’ request to sell the stock of the company at private sale.
|sThe record on appeal contains no transcript of the 14 March 2003 hearing and this court has no evidence as to what evidence, if any, was heard by the trial court. The trial court issued no reasons for the judgment.
From the 26 March 2003 judgment, the co-executors timely sought supervisory writs and obtained an order for a devolu-tive appeal. In both writ and appeal, the co-executors assign as error that the trial court erred in interpreting the decedent’s *735 will, “which provides ‘and all funeral and administrative expenses shall be borne by the hereinbelow bequest’ to mean they should be paid by the trust created by decedent’s will rather than the stock of The Sporl Company which is the bequest to the Trust. [Emphasis in original.]”
We are aware of certain ambiguities in the jurisprudence relating to whether a devolutive appeal lies from the refusal of a court to homologate a tableau of distribution. La. C.C.P. art. 3308 directs that only a suspensive appeal is permitted from the order homologating a tableau; the article is silent as to whether a devolutive appeal lies from a denial of the order of homolo-gation.
We conclude that no devolutive appeal lies from the denial of an order to homologate a tableau of distribution because the order is interlocutory in nature. That is, nothing prevents the succession representative from filing a new proposed tableau of distribution asserting the same matters as addressed in an earlier tableau the homologation of which was declined. The code is logical in this regard. Because an order homologating a tableau authorizes the distribution of succession assets, a person opposing the distribution would want to be sure that the assets remain in the hands of the succession representative pending appellate review; assets once distributed are difficult to recover. However, the denial of an order of homologation changes nothing; the assets remain in the possession of the | fisuccession representative until the court authorizes their distribution. Further, a succession representative could unduly delay the closing of a succession, as mandated by La. C.C.P. art. 3197, by filing multiple tableaus of distribution, losing the trials of the motions to homologate, and then devolutively appealing the denials of the orders of homologation; in such circumstances, the succession representative could claim that he or she could not close the succession because an appeal was pending on the order denying the homologation.
The Code of Civil Procedure and relevant jurisprudence support our interpretation. Pursuant to La. C.C.P. art. 1841, a judgment that does not determine the merits, but only preliminary matters in the course of the action, is an interlocutory judgment, whereas a judgment that determines the merits in whole or in part is a final judgment. The judgment at issue in this case did not determine any of the merits; it only refused to homologate a proposed tableau of distribution and authority to redeem shares of stock. Nothing prevents the co-executors from filing a subsequent motion on the same issues.
We also find support in the Supreme Court case of Succession of Daste, 254 La. 403, 223 So.2d 848 (1969). There, in the process of administering the estate, the testamentary executor filed a “Petition for Homologation of Final Tableau of Distribution” to which he attached a “Final Tableau of Distribution.” The widow opposed the tableau, setting forth numerous objections. The trial court rendered a “formal” judgment, in which certain matters were “ordered, adjudged, and decreed.” In addition, the court ordered the executor to file an amended tableau of distribution in accordance with the judgment and the law.
A motion for a suspensive and/or devolu-tive appeal from the judgment was filed by the widow and granted by the Court. Because the suspensive appeal bond|7was not timely filed, the appeal was perfected as a devolutive appeal. Motions to dismiss, predicated on the authority of La. C.C.P. art. 3308, were filed.
The Supreme Court stated as follows:
The Fourth Circuit found that a sus-pensive appeal had not been perfected, *736 the appeal bond not having been filed within fifteen days. The Court, however, correctly recognized that a valid devolu-tive appeal had been perfected, but erroneously concluded that the widow was only entitled to a suspensive appeal at that stage of the proceedings and dismissed the appeal. Although there is dicta which indicates that the Court of Appeal construed the judgment of the trial court to be interlocutory and not appealable, we are convinced that the court of appeal judgment was actually based upon the theory that the July 6, 1966 judgment of the trial court was a judgment homologating the tableau of distribution from which only a suspen-sive appeal was permissible under the mandate of Article 3808 of the Code of Civil Procedure. If the Court of Appeal had adopted either of the two alternatives to this result, it should have either dismissed the appeal as an unappealable interlocutory decree or it should have considered the merits of the issues presented by the valid devolutive appeal. The result the Court of Appeal did reach could only be reached if the judgment appealed from was considered a judgment homologating a final tableau of distribution, for only in that instance is a suspensive appeal mandatory.
We find the Court of Appeal improperly dismissed the widow’s appeal because the trial court judgment of July 6, 1966 was neither an interlocutory judgment nor a judgment homologating the tableau of distribution. It was, instead, a final judgment adjudicating substantially all of the controverted issues in the succession on the merits.
The trial court judgment of July 6, 1966 was not a judgment homologating a tableau of distribution, as contemplated in Article 3308 of the Code of Civil Procedure, because it neither ordered, adjudged nor decreed that the tableau be approved or homologated. To the contrary, the judgment ordered the testamentary executor to “file an Amended Final Tableau of Distribution in accordance with this judgment and in accordance with law.” Moreover, the judgment did not pass upon some of the issues presented by the tableau, | sand it adjudicated issues presented by pleadings other than the petition to homolo-gate the tableau. In other words, the judgment decided some controverted questions presented by the tableau and other questions at issue by the pleadings, and, since these adjudications would after the computations and distribution proposed by the tableau, the judgment ordered the filing of an amended tableau as an alternative to the homologation.
When we decide that the trial court judgment of July 6, 1966 was a final judgment, other than a judgment homol-ogating a tableau of distribution, we, of course, deny the validity of the dicta in the opinion of the Fourth Circuit (195 So.2d 292) to the effect that the July 6, 1966 judgment was interlocutory and non-appealable. In deciding that the judgment of July 6, 1966 was a final judgment, we decide also that a devolu-tive appeal could be taken from that judgment and it was not necessary to perfect a suspensive appeal as required in the case of a judgment homologating a tableau. See La. Code Civ. P. art. 3308 (1961).
The trial court judgment of July 6, 1966 was final primarily because it “Ordered, Adjudged and Decreed” the rights of the parties on the merits on substantially all of the principal questions in controversy concerning which nothing remained to be done except to incorporate these decisions in an amended tableau to be submitted for homolo- *737 gation. In addition, the judgment decreed a purported codicil ineffective, for it lacked dispositive language; it fixed the widow’s status as residuary legatee and her liability for the succession debts and her ownership of certain stock, funds and other movables; it fixed the entitlement to rents and dividends among the legatees, the compensation of the executor and disposed of claims for enhancement of decedent’s separate estate by the community; and the judgment decreed that the widow was not a widow in necessitous circumstances.
All of these questions were resolved after protracted hearings involving the taking of testimony and the reception of other evidence. The processes of the law which are preludes to final judgments were fully observed. We have belabored this opinion with a detailed recitation of the substance of the oppositions and the judgment of July 6,1966 to point out the basis for our finding that the issues involved trenched upon the merits of the cause.
| gIt may be that the judgment was not a final judgment in the sense that it was the last judgment to be rendered in the case, but it did determine “the merits in whole or in part.” La.Code Civ. P. art. 1841 (1961). And, therefore, it is not an interlocutory judgment which “does not determine the merits but only preliminary matters in the course of the action.” La.Code Civ. P. art. 1841 (1961).
We have relied to a great extent in this decision upon the authority of Oliphint v. Oliphint, 219 La. 781, 54 So.2d 18 (1951); Garland v. Dimitry, 164 La. 875, 114 So. 718 (1927) and Cary v. Richardson, 35 La.Ann. 505 (1883), for we are unaware of any provision of the new Code of Civil Procedure which would nullify the applicability of the reasons and conclusions announced in these cases decided prior to the promulgation of the Code.
Id. at 410-14, 223 So.2d at 851-52.
In the instant matter, the judgment rendered below did not dispose of any of the disputed matters between the parties. In other words, it is not a final judgment as defined by the Code of Civil Procedure and, therefore, no appeal can be taken whether suspensive or devolutive. We, however, understand that the co-executors wished to preserve the issue for review by this court of the 26 March 2003 judgment. They have done so by the timely filing a notice of intent to seeking supervisory writs. Accordingly, we grant the co-executors application for supervisory writs and vacate the order for devolutive appeal entered by the trial court on 8 May 2003. We now proceed to address the remainder of the co-executors’ claims.
The record on appeal contains both the co-executors’ allegations relating to the debts that should be paid and Harold’s objections thereto. We have no evidence in the record on appeal that supports the co-executors’ claims that the disputed debts exist or are owed by the succession. Allegations contained in the |intableau are not evidence. We also note that Harold’s opposition to the homologation filed in the record evidences no objection to the payment of debt items 6, 7, and 10, totaling $32,966.00. We further note that the tableau reflects sufficient funds to cover these items. However, without a record of the proceedings before the trial court on 14 March 2003, this court is unable to find an abuse of discretion by the court below.[2] Accordingly, we do not find the trial court’s judgment refusing to grant the order homologating the tableau for the payment of the debts to be manifestly errone *738 ous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). However, refusing to grant an order permitting the co-executors authority to redeem or sell at private sale the stock in the company presents a slightly different issue.
It is apparently undisputed that the articles of incorporation of the company, relative to transfer of shares of stock in the company, provide in pertinent part:
(a) No transfer of shares from the name of the holder thereof registered on the corporation’s books shall be made, until the shares shall first have been offered for sale to the corporation and its shareholders at their adjusted book value (as defined hereinafter).... In the event of death of a registered shareholder of this corporation, such shareholder’s stock shall pass as provided by law, except for such of the decedent’s holdings of stock of the corporation as may have, by separate agreement between the decedent and the corporation, been made subject to the provisions of this section. As stock passing by death shall thereafter be subject to the restrictions imposed by this section.
(b) [Adjusted book value is defined at this point.]
(c) Any offer made under paragraph (a) of this section shall be made by registered mail addressed to the board of directors of the corporation at its registered office, as agent of the corporation and its other shareholders. Upon Inreceipt of any such offer, or upon occurrence of any event giving rise to an option in favor of this corporation and its shareholders under paragraph (a) of this section, the board of directors of the corporation shall meet and decide promptly whether the corporation should accept the offer or exercise the option as the case may be. If it is decided that the corporation is able to or should do so, none of the shareholders shall be entitled to the benefit of the offer or option. If it is decided that the corporation should or may not do so for any reason, or that only a part of such shares should or may be purchased by the corporation, the corporation shall notify the other shareholders by certified mail of the availability of such shares, and shall request in such notice that each signify in writing within ten days from the date of receipt, the number of available shares which he agrees to purchase. If one or more of such other shareholders, within such period, advises the corporation of his or their election to purchase all of the shares available to them, the shares shall be sold to him or them, in the latter case as nearly as possible in proportion to their holdings ....
It is further undisputed that the co-executors have notified the company of the decedent’s passing and that negotiations relating to the redemption of the decedent’s shares have occurred. We have no evidence in the record before us of any agreement with the company or anyone else regarding the purchase price of the shares.
The authority to seek the authority to sell the shares of the company stock rests with the co-executors. Moreover, the provisions of the decedent’s testament, as well as the law, clearly mandate that the stock be sold to pay debts of the succession and to maintain Virginia. Until such time as the trust is funded, the trustees have no duty or authority to pay succession debts. In fact, unless the trust specifically directs that succession debts be paid from the trust, the trustees may well breach a fiduciary duty paying a debt that is not that of the beneficiary, for a trustee’s duty is first to the beneficiary and secondarily to the settlor (trustor). See La. R.S. 9:2081 et seq.; La. C.C.P. art. 3191 et seq. In view of the company’s | ^failure to pay dividends to its shareholders that could be used by the co-executors to pay debts and maintain *739 Virginia, the co-executor’s have the right, obligation, and duty to redeem and/or sell stock of the company to pay debts and maintain Virginia if inadequate funds are in their hands to do so.
However, there are certain issues that need to be resolved before redemption or sale may occur. In light of the restriction on the sale of stock contained in the articles of incorporation, a sale of the stock should not go forward until the requirements quoted above are fulfilled. Of course, without a copy of a stock certificate in the record, there is no evidence of a restriction on the sale of stock. See La. R.S. 12:57 F.
In addition, the company is a closely-held corporation. La. C.C.P. art. 3285 states:
A succession representative may sell bonds and shares of stock at private sale at rates prevailing in the open market, by obtaining a court order authorizing the sale. No advertisement is necessary, and the order authorizing the sale may be rendered upon the filing of the petition.
The endorsement of the succession representative and a certified copy of the court order authorizing the sale shall be sufficient warrant for the transfer.
Comment (b) to La. C.C.P. art. 3285 states:
(b) If such stocks or bonds do not have a value in the open market, the provisions of this Code for private sales of movables apply.
Thus, any sale of the stock in the company must be by private sale, but only after the co-executors attempt to redeem same in accordance with the articles of incorporation, if they are required to do so because the stock certificate in the company reflects that the transfer of the stock is restricted by the articles of incorporation.
|13In the absence of evidence, we therefore conclude that the trial court was neither manifestly erroneous nor clearly wrong in refusing to permit the co-executors to redeem the stock of the company or sell the decedent’s stock in the company.[3]
For the foregoing reasons and in summary, we grant the co-executors’ application for supervisory writ, vacate the order of devolutive appeal, and affirm the trial court’s judgment.

WRIT GRANTED; APPEAL DISMISSED; AFFIRMED.

. We are aware that the trust is created at the moment of death of the settlor (trustor). La. R.S. 9:1821. However, the assets are not immediately transferred to the trust at the moment of death. Rather, the assets must undergo administration in the succession proceeding to assure, inter alia, that the decedent’s debts and other charges are paid. See La. C.C. art. 935.

. That is, we do not know if the parties submitted the matter on their briefs and the atlachments thereto, or whether the parties entered into a stipulation in open court.

. We do not, however, direct that the company redeem the stock in accordance with the company’s articles of incorporation. That must be done by agreement or addressed in another proceeding. Nor do we address whether other shareholders of the company may or must buy the decedent's stock. We further do not address whether the co-executors may sell the stock at private sale to third persons other than shareholders of the company. If the co-executors desire to sell the stock to non-shareholder third persons, such must be done in accordance with the provisions of the sale of succession assets. La. C.C.P. art. 3281 et seq.