900 So.2d 1054 (2005)
SUCCESSION OF Cyprian A. SPORL, Jr.
No. 2004-CA-1373.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 2005.
*1056 Edward D. Wegmann, Miriam W. Henry, Matthew T. Brown, Jones Walker Waechter Poitevent Carrere & Denegre, L.L.P., New Orleans, Louisiana, for Appellant.
Charles A. Snyder, David J. Conroy, Richard A. Whann, Milling Benson Woodward L.L.P., New Orleans, Louisiana, for Appellee, Virginia Pierce Sporl.
Maunsel W. Hickey, Hickey & Riess, New Orleans, Louisiana, for Appellee Testamentary Co-Executor of the Succession of Cyprian A. Sporl, Jr.
(Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY III, Judge EDWIN A. LOMBARD).
JAMES F. McKAY III, Judge.
This is an appeal from a judgment rendered in a succession proceeding, granting a petition for authority to pay estate debts and for homologation of a tableau of distribution.

FACTS AND PROCEDURAL HISTORY
Cyprian A. Sporl, Jr. (decedent) died on March 31, 1999. He died testate, leaving a will in statutory form, a codicil in statutory form, and four olographic codicils (collectively hereafter referred to as the testament). The testament named Virginia Pierce Sporl (Virginia)[1], the decedent's wife and now widow, Maunsel W. Hickey (Maunsel), and Harold D. Sporl, Jr. (Harold)[2] as testamentary co-executors of the succession to serve without bond. The co-executors qualified as co-executors and letters testamentary were issued to them on April 19, 1999.[3] This estate had been under administration for over five years.
A testamentary or mortis causa trust was created, which included all the stock of the Sporl Company that was owned by Cyprian Sporl at the time of his death. The three named trustees are Virginia, Harold and Henry Schonberg.[4] The decedent named Virginia as the income beneficiary, Harold as the trustee and a principal beneficiary of the trust and Patricia Sporl Schonberg (Patricia) also as a principal beneficiary of the trust.
Among the assets of the succession, as shown by the sworn descriptive list, were the shares of stock in The Sporl Company *1057 (Company), a privately owned personal holding company, of which the decedent was the majority shareholder prior to his death. Harold, the decedent's brother, was left a particular legacy of 1,700 shares of the company stock, which he was placed in possession of on March 8, 2000, and thus rendering the decedent's succession a minority shareholder.[5] On February 13, 2003, the co-executors filed a sworn descriptive list of the succession assets showing estate assets totaling $3,857,178.00.
On February 18, 2003, the co-executors filed a proposed tableau of distribution listing the debts that needed to be paid and seeking the authority to have the company redeem the stock of the decedent in the company or the authority to sell the stock at private sale. Hearings were held on March 14, 2003, and on March 26, 2003. The trial court issued a judgment refusing to homologate the tableau or to authorize the redemption of the stock in the company. The co-executors sought a supervisory writ and obtained a court order for a devolutive appeal to this Court. In both the writ and the appeal, the co-executors assigned as error that the trial court erred in interpreting the decedent's will, which provides, "and all funeral and administrative expenses shall be borne by the hereinbelow bequest" to mean that they should be paid by the trust created by decedent's will rather than the stock of The Sporl Company which is the bequest to the Trust." This Court dismissed the devolutive appeal holding that it was interlocutory and addressed the matter as a supervisory writ.[6] In the supervisory writ this Court held that there was no error in the trial court's refusal to grant an order to homologate the tableau for the payments of the debts but that nothing prevented the succession representatives from filing a new proposed tableau of distribution asserting the same matters addressed in an earlier tableau, the tableau of which was declined. This Court also found no error in the trial court's refusal to permit the co-executors to redeem the stock of the company or sell the decedent's stock in the company.
Subsequent to the opinion being issued by this Court the co-executors, Virginia and Maunsel, filed a second petition for homologation of tableau of distribution and for the authority to redeem shares of stock in the company at book value and/or use stock in the company to discharge obligations. Harold filed an opposition to this petition. The trial court granted the co-executors second petition for homologation of the tableau of distribution and the co-executors authority to redeem shares of stock at book value and/or to discharge obligations and approved the tableau in its entirety. It is from this judgment that the appellants appeal.

ASSIGNMENTS OF ERROR
The appellants assert five assignments of error based on the trial court committing error as a matter of law and one assignment based on a manifest error/clearly wrong standard. They argue that: (1) The district court erred as a matter of law when it classified Virginia's distributions to herself as estate debts and authorized Virginia to liquidate Company stock to pay disputed "estate debts;" (2) The district court erred as a matter of law by permitting Virginia to recover her legacy twice by both improper distributions to *1058 herself and by liquidation of Company stock that belongs in trust for Harold and Patricia; (3)The district court erred as a matter of law by allowing Virginia to liquidate Company stock that is subject to a particular legacy in order to make a distribution to a residual legacy; (4) The district court erred as a matter of law when it permitted Virginia and her co-executor to substitute themselves as de facto trustees of the trust to the detriment of the Sporl family; (5) The district court erred as a matter of law by authorizing Virginia to reimburse herself from Company stock for personal legal fees; (6) The district court committed manifest error by authorizing Virginia to reimburse herself for estate debts in the absence of probative evidence that the debts were legitimate estate debts.

STANDARD OF REVIEW
The proper standard of review for a Louisiana appellate court is whether the trial court is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). While the manifest error standard applies to our review of facts found below, we are required to examine the record as well for legal error. Where an error of law taints the record, we are not bound to affirm the judgment of the lower court. Id. at 844. Furthermore, when a trial court makes one or more prejudicial legal errors which interdict the fact-finding process, the manifest error standard is no longer applicable, and the appellate court is obliged to make its own independent, de novo review of the record if such is complete. Evans v. Lungrin, 97-0541, 97-0577, p. 7 (La.2/6/98), 708 So.2d 731, 735; McLean v. Hunter, 495 So.2d 1298, 1303-04 (La.1986). The Supreme Court stated in Evans: "Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." Evans 708 So.2d at 735. However, under Evans, a de novo review should not be undertaken for every evidentiary exclusion error. De novo review should be limited to consequential errors, which are those that have prejudiced or tainted the verdict rendered. Wingfield v. State ex. rel. Dept. of Transportation and Development, 2001-2668, 2001-2669, p. 15 (La.App. 1 Cir. 11/8/02), 835 So.2d 785, 799.
The court of appeal should not set aside the factual findings of a trial court absent manifest error or unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, if a court of appeal finds that the trial court committed a reversible error of law or manifest error of fact, the court of appeal must ascertain the facts de novo from the record and render a judgment on the merits. LeBlanc v. Stevenson, 00-0157 (La.10/17/00), 770 So.2d 766. Although appellate courts should accord deference to the factfinder, they nonetheless have a constitutional duty to review facts. Ambrose v. New Orleans Police Dep't Ambulance Serv., 93-3099, p. 8 (La.7/5/94), 639 So.2d 216, 221. Because appellate courts must perform this constitutional function, they have every right to determine whether the trial court verdict was clearly wrong based on the evidence or clearly without evidentiary support. Id. at pp. 8-9, 639 So.2d at 221. The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Stobart v. State of Louisiana, Through Dep't of Transp. & Dev., 617 So.2d 880, 882 (La.1993). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable. Id. We have previously emphasized the *1059 principle that "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. at 882-83.

DISCUSSION
Before we address appellants' numerous assignments of error, we have concluded that the specific issue concerning the legality of selling shares of the stock in the company for the purposes of paying succession debts and maintaining Virginia for the remainder of her life was previously addressed by this Court in Succession of Sporl, XXXX-XXXX (La.App. 4 Cir. 10/1/03), 859 So.2d 732.
The authority to seek the authority to sell shares of the company stock rests with the co-executors. Moreover, the provision of the decedent's testament, as well as the law, clearly mandate that the stock be sold to pay debts of the succession and to maintain Virginia. Until such time as the trust is funded, the trustees have no duty or authority to pay succession debts. In fact, unless the trust specifically directs that succession debts be paid from the trust, the trustees may well breach a fiduciary duty paying a debt that is not that of the beneficiary, for a trustee's duty is first to the beneficiary and secondly to the settler (trustor). See La. R.S. 9:2081 et seq.; La. C.C.P. art. 3191 et seq. In view of the company's failure to pay dividends to its shareholders that could be used by the co-executors to pay debts and maintain Virginia, the co-executor's [sic] have the right, obligation, and duty to redeem and/or sell stock of the company to pay debts and maintain Virginia if inadequate funds are in their hands to do so. (emphasis added).

Id. at 738-739.
The appellees assert that the Company had consistently paid dividends to the shareholders for many years and that the lion's share of the decedent's and Virginia's income was derived from this distribution.[7] The record reflects that these dividends stopped around the same time as Harold obtained his 1,700 shares of the company stock; Harold was put in possession of these shares on March 8, 2000. It is to be noted that the trust has not yet been put in possession of these stocks.
Moreover, based on Louisiana jurisprudence, the succession representative is "given broadened powers" under the Louisiana Code of Civil Procedure and is "the majordomo of the estate, having possession of all its property as well as the power and the responsibility to preserve its assets and enforce its claims." Succession of Wallace, 574 So.2d 348, 356-57 (La.1991).
The authority to sell shares of the company stock is clearly the prerogative of the executor of the estate. With that being said, the only real issue before this Court appears to be if the estate debts claimed by the co-executors are legitimate claims that have been supported by the evidence presented to the trial court.
By way of illustration, the following is the tableau of distribution listing outstanding expenses of administration, debts and other payments, which the trial court approved in its entirety and rendered judgment:[8]

*1060 Item 1.
Virginia Pierce Sporl (Income received by this succession [to all of which Mrs. Sporl was entitled as usufructuary and/or income beneficiary] but not paid to her during the period from March 31, 1999 to October 31, 2003). $35,762.77; "As Income Beneficiary under the will; the widow was deprived of this sum by the actions of Harold Sporl, Jr. in contravention of decedent's will. Thus, the Court approves payment in the amount of $35,762.77".
Item 2.
Virginia Pierce Sporl (Reimbursement as living expenses for legal fees paid by Mrs. Sporl from her personal funds to Milling Benson Woodward L.L.P. in her individual capacity in connection with the succession through January 31, 2003 and reimbursement for legal fees paid from personal funds for representing the co-executors in a lawsuit and claims brought by the Sporl Company through October 31, 2003). $79,929.96 "It was necessary for her to defend herself as executrix and as individual and at the same time. This amount is compensable. Thus, the Court approves payment in the amount of $79,929.96."
Item 3.
Virginia Pierce Sporl (Reimbursement for personal funds advanced to pay 1999 federal income taxes due by the decedent and to pay the 1999 Louisiana income taxes by the decedent). $21,016.00 "Clearly owned by decedent from the estate. Thus, the Court approves payment in the amount of $21,016.00."
Item 4.
Sandra Sexton Ferrel and Virginia Poerce Sporl (Reimbursement due Whitney National Bank Custodian Account # XXXXXXXXX standing in the name of Succession of C.A. Sporl, Jr. of which Sandra Sexton Ferrel is the naked owner and Virginia Pierce Sporl is the usufructuary, for the distribution made out of principal, in excess of income over a four year period, through October 31, 2003). $328,659.91
"This amount was started when Harold Sporl, Jr. was a co-executor and has continued without interruption or complaint. It should be paid. This amount should be taken from the Sporl Company stock to reimburse the usufructuary's account per the decedent's will. Thus the Court approves the payment in the amount of $328,659.91."
Item 5.
Virginia Pierce Sporl and Sandra Sexton Ferrel (Reimbursement for one-half of debts paid out of succession assets to which they are entitled as usufructuary and naked owner). $12,178.38.
"This amount should be repaid; Harold Sporl, Jr's objection is premature and may be made at another time. He stopped all assets from flowing in contravention of the will and now complains of its lack of assets when expenses are paid first from trust stock. Thus, the Court approves payment in the amount of $12,178.38."
Item 6.
Maunsel W. Hickey (Unpaid fees for handling decedent's succession including amount agreed upon by co-executors in excess of the amount fixed by decedent's will at one% of decedent's probate estate). $12,572.00.
"Clearly, according to law when usual work is more than anticipated by the decedent, especially when caused by legatees. Thus, the Court approves payment in the amount of $12,572.00." [sic]

*1061 ASSIGNMENT OF ERROR ONE
In appellants' first assignment of error they argue that the district court erred as a matter of law in classifying Virginia's distributions to herself as estate debts and authorizing her to liquidate Company Stock to pay disputed "estate debts." The contention that Virginia's living expenses are not estate debts is without merit as it was and is the clear intent of the decedent that she be maintained at the cost of the entire estate if necessary. The bequest to the Trust was a residual bequest that burdened decedent's estate as he specified that Virginia be maintained in the standard of living she enjoyed at the time of his death. This argument is consistent with the fact that the dividends from the company were the primary source for income for the decedent and Virginia during their marriage. Maunsel Hickey, testified that "the income from investments that the decedent had that had gone into the [Usufruct Account] and the Sporl Company dividends, together would produce the funds that Mrs. Sporl would need. Unfortunately, those dividends did not continue and that assumption... did not pan out." With that being said while we agree that decedent's entire estate is burdened with the task of maintaining Virginia some specific evidence of the cost of this maintenance and that she has insufficient funds to achieve this style of living must be presented to the court.
We disagree with appellants' assertion that this is a legal error and apply a manifestly erroneously clearly wrong standard of review. Although the trial court heard all of the evidence and determined that the expenses referencing these distributions were in fact legitimate estate expenses and are clearly the intent of the decedent we cannot determine from the record before this Court what was the basis for the trial court's decision. The trial court was clearly correct in determining that the entire estate has an ongoing responsibility to maintain Virginia. Nevertheless, there is insufficient evidence in the record to determine the degree to which she needs additional funds for her style of living other than unsubstantiated claims. Additionally, it is unclear if in fact the asserted reimbursements are in fact debts of the estate. To reiterate, if these claims are found to be legitimate succession debts and funds are needed for the support and maintenance of Virginia, we agree that the stocks in the Company should be liquidated to provide for these needs. Therefore, we remand the matter back to the trial court for an evidentiary hearing to make these determinations.

SECOND ASSIGNMENT OF ERROR
In appellants' second assignment of error they assert that the trial court erred as a matter of law in permitting Virginia to recover her legacy twice by both improper distributions to herself and by liquidating the Company's stock that belongs in trust for Harold and Patricia.
The appellants take the position that the bequest to appellant created a testamentary trust at the moment of decedent's death, and that the Trust should immediately be placed in the possession of the Sporl Company stock. However, this Court in its judgment in case Succession of Sporl, 859 So.2d 732, found that although the Trust was created at the moment of death the assets are not immediately transferable to the Trust at the moment of death. "Rather, the assets must undergo administration in the succession proceedings to assure, inter alia, that the decedent's debts and other charges are paid. See La. C.C. art. 935." Therefore, as previously addressed we agree with the trial court's judgment allowing the co-executors to redeem shares of stock at book value *1062 and to discharge obligations of the estate prior to the satisfaction of the bequest of stock to the Trust.
Furthermore, appellants' assertion that Virginia is recovering her legacy twice is without merit. The appellants assert that the delivery of a legacy is not a debt of the succession, but merely a distribution of succession property to a legatee. Appellants argue that debts and legacies are not one and the same, and allege that Virginia seeks to classify distribution she made to herself, as co-executor, as "estate debts," so that she can liquidate estate assets bequeathed to other heirs, namely Harold and Patricia, and in effect, for her to receive her legacy twice.
The decedent clearly wanted his wife maintained in the style to which she was accustomed prior to his demise. Accordingly, we cannot find that the trial court was manifestly erroneous or clearly wrong in its judgment.

ASSIGNMENT OF ERROR THREE
In their third assignment of error the appellants assert that the trial court erred as a matter of law by allowing Virginia to liquidate Company stock to a particular legacy in order to make a distribution to a residual legacy. This argument is once again base upon the assertion that the particular legacy to Harold and Patricia in the form of the Testamentary Trust bequest should trump the residual legacy to Sandra Ferrel whose legacy is subject to the usufruct in favor of Virginia. While this argument has merit it is clearly premature as the Trust cannot be put in possession of the stock until the decedents debts and charges are paid. La. C.C. art. 935.

ASSIGNMENT OF ERROR FOUR
Appellants' fourth assignment asserts that the trial court erred as a matter of law when it permitted Virginia and her co-executor to substitute themselves de facto trustees of the trust to the detriment of the Sporl family. This assignment of error is merely an unsupportable accusation and without merit based on the record before us.

ASSIGNMENT OF ERROR FIVE
In appellants' fifth assignment of error they argue that the trial court erred as a matter of law by authorizing Virginia to reimburse herself from company stock for personal legal fees. We agree and review this de novo. Virginia claims reimbursements from the estate for $79,929.96 in legal fees she allegedly incurred to pay Milling, Benson, Woodward, L.L.P. (Milling), to represent her. The appellants assert that Virginia incurred these fees separately for her personal benefit and in addition to fees charged by Mr. Hickey for legal services rendered to the estate.
After a de novo review of the record we conclude that there was insufficient evidence to justify or account for the $79,929.96 in legal fees to Milling. It is clear that Mr. Sporl's testament provided for Mr. Hickey to be the attorney for the estate, yet when questioned during trial he admitted that he had not reviewed the $79,929.96 from Milling. It is not clear how this figure was derived other than a list of "Legal Fees" with undocumented monthly amounts for various years. Clearly, this amount is uncorroborated and unsubstantiated. "[A]lthough parties are permitted to contract with respect to attorney fees, . . . attorney fees are subject to review and control by the courts." Leenerts Farms, Inc. v. Rogers, 421 So.2d 216, 218 (La.1982). Moreover, the reasonableness of an attorney fee award is always subject to court scrutiny.... The succession representative who seeks court approval to pay such fees must, however, meet a threshold burden of establishing *1063 the basis and amount of the fees, just as she would be required to do to obtain court approval to pay other debts or charges of the succession. Succession of McLean, 26,566 (La.App. 2 Cir. 3/1/95), 651 So.2d 920, 929.
Furthermore, there is no proof that these fees were for the benefit of the estate. Therefore, we find merit to appellants' argument and remand this issue for a hearing to determine the legitimacy of these legal fees and whether they are a personal legal debt of Virginia or a legitimate estate debt.

ASSIGNMENT OF ERROR SIX
In appellants' sixth and final assignment of error they argue that the trial court committed manifest error by authorizing Virginia to reimburse herself for estate debts in the absence of probative evidence that the debts were legitimate estate debts. As we have opined above, the trial court examined all of the evidence and testimony presented at trial and made factual determinations for which we cannot find support in the record before us. We are constrained from determining the legitimacy of these claims without a determination on the need and funding for the maintenance of Virginia Sporl. In a sense these claims are premature. Therefore, we find that it was unreasonable for the trial court to make such a determination without factual support for appellees' propositions of the legitimacy of the estate debts. Therefore, we remand the matter to the trial Court.
For the above and forgoing reason we affirm the judgment of the trial court with the exception of the determination of the attorneys' fees paid to Milling as debts of the estate and for an evidentiary hearing to determine what funds are needed for the care and maintenance of Virginia to comport and comply with the clear intent of the decedent. Therefore, we partially vacate the judgment and remand the matter to for the limited purpose of determining the amount of the attorneys' fees owed to Milling and the legitimacy of these fees as they pertain to estate debts. Furthermore, we remand this matter to the trial court for a hearing to determine what supportable evidence is available, if any, to corroborate what expenses of Virginia are legitimately for her support and maintenance.
AFFIRMED IN PART; VACATED IN PART AND REMANDED IN PART.
NOTES
[1] Cyprian A. Sporl and Virginia Pierce Sporl had no children from their marriage. Virginia is the second wife of decedent. Sandra Sexton Ferrel is the daughter of Virginia by another marriage. As of the date of the filing of the petition Virginia Sporl was 95 years of age.
[2] Harold Jr. is the nephew of the late Cyprian Sporl; he and his sister, Patricia Sporl Schonberg, are both children of the decedent's late brother Harold Sporl, Sr.
[3] Harold Jr. resigned as co-executor on December 12, 2000.
[4] Henry Schonberg is the husband of Patricia Sporl Schonberg.
[5] It is unclear from the record before this Court how Harold was put in possession of these stocks and by whose authority, as the trust has not yet been placed in possession of the Company stock.
[6] Succession of Sporl, XXXX-XXXX (La.App. 4 Cir. 10/1/03), 859 So.2d 732
[7] The amount of dividends did fluctuate from year to year.
[8] This is the list that was filed by the co-executors, Virginia Sporl and Maunsel Hickey, in their second petition for homologation of tableau of distribution and for authority to redeem shares of stock at book value and/or use stock to discharge obligations along with the trial court reasons for judgment signed on May 4, 2004.