PETTIGREW, J.,
CONCURS IN' PART, DISSENTS IN PART, AND - ASSIGNS REASONS.
Although I agree in part with the majority’s opinion, I disagree with the majority reversing that portion of the trial court’s judgment that homologated the ninth, tenth, eleventh, and ‘twelfth tableaus of distribution, authorizing use of succession funds to. challenge the 2011 will and the 2009 intervivos donations, authorizing payment of expert fees to Dr.. Lebourgeois, and authorizing payment of attorney fees for handling such services and other succession legal representation.
I would affirm the trial court’s judgment in all respects.
Jimmy’s attorney, Mr. Shockey, testified at the hearing concerning the attorney fees claimed as estate debts. He testified that he has represented Jimmy since the inception of the succession and that all the services he has provided to date can be classified into one of the following six “groups or classes”: (1) general administrative expenses common to all successions (getting the administrator .appointed, the bond therefor posted, advising regarding the duties and compliance of the administrator, opening a succession bank account, handling claims of creditors, etc.); (2) the identification and collection of succession assets, which he testified had been a more significant event in the Reno succession than in a typical case; (3) bringing legal action to recover intervivos donations of succession assets made at a time when the decedent’s capacity was questionable; (4) bringing legal action to challenge the petition to probate the 2011 will on the basis that it is not reflective of the decedent’s intent; (5) bringing legal action for an accounting by Joshua Fontenot pursuant to a power of attorney of the decedent which Joshua held; and (6) defending actions seeking to remove Jimmy as administrator.
. Mr, Shockey further .explained, individually, each of the detailed invoices (introduced into evidence) for the legal services rendered by him in connection with each of *1158 the four opposed tableaus of distribution. Each of these invoices contain a detailed narrative- of the legal service provided, the amount of time expended, the date, the amount charged therefor, and—most significantly in relation to this appeal—Mr. Shockey’s analysis of which of the foregoing categories of legal services, rendered for the benefit of the succession, as listed above, corresponded to each charge on each invoice.
Additionally, Mr. Shockey testified concerning the medical reports that had been generated by medical experts, retained when the decedent’s medical records revealed the presence of frontal temporal dementia, during the time in which the decedent was' executing transactions of succession assets. Specifically, he identified the invoices for the psychological autopsy performed by the medical expert (forensic psychiatrist, Dr. Terry Lebourgeois), necessitated by the challenges to the decedent’s mental capacity.
Mr. Shockey also identified and testified concerning the invoices submitted by Neil Ferrari, a 'local CPA, and Hannis T. Bourgeois, a CPA firm. They were employed to provide services to the succession; such as, preparing federal and state income tax forms, providing accounting and valuation services in connection with a partnership and a corporation in which thé decedent owned interest, reviewing prior financial records of the decedent to determine additional sources of revenue, and assisting in the location of succession assets.
Finally, Mr. Shockey testified that not everything he had done in connection with the succession had been billed to the succession. On cross examination, he identified certain expenses that Jimmy incurred personally, and which he paid for himself, arid expenses incurred by other heirs, but were not billed through the succession, including legal fees incurred in challenging the petition to probate the 2011 will.
We note that Mr. Shockey’s testimony was uncontroverted and that neither Ms. Reno nor Joshua presented any evidence at the hearing in connection. with their oppositions to the petitions for authority to pay the succession debts and the tableaus of distribution.[1]
Based on the foregoing evidence, the district court concluded that the legal services submitted as estate expenses in the four tableaus of distribution at issue were incurred by Jimmy,, as administrator and for the benefit of the succession. After my review of the record, I conclude that the *1159 district court’s finding is supported by the evidence presented and is in accordance with the applicable jurisprudence. I am of the opinion the trial court did not commit manifest error, legal error, or abuse its discretion.

. On the basis of the quality of the evidence presented in this case, we distinguish this matter, and the result reached herein, from that in another wise seemingly similar case, Succession of Sporl, 900 So.2d 1054. In Sporl, one of the assigned errors was that the trial court erred by authorizing the executor of the estate to reimburse herself personal legal fees, classified by the executor as an estate debt. As in the case before us, the appellants in Sporl argued that the fees sought to be reimbursed by the executor were incurred separately for the personal benefit of the executor "in addition to fees charged by [the attorney] for legal services rendered to the estate]’ Sporl, 900 So.2d at 1062(emphasis added). The fourth circuit concluded that there was in sufficient evidence in the record to justify the authorization to pay the $79,929.96 in legal fees as an estate debt. The appellate court noted the amount was uncorroborated and unsubstantiated, stating that the succession representative who seeks court approval to pay such fees must “meet a threshold burden of establishing the basis and amount of the fees,” as well as prove that the fees were for the benefit of the estate, and as such, a legitimate estate debt. Sporl, 900 So.2d at 1063. The appellate court’s ruling was expressly based on the lack of support- in the record for the determinations of the trial court that the debts were legitimate estate debts. Id. As noted, in the instant case, Mr. Shockey’s testimony provided a very detailed explanation of the legal services provided, as well as testimony supporting the classification of those services as estate debts incurred for the benefit of the estate.