WICKER, Judge.
This appeal arises from a succession case in which Clifford C. Quinn (the son) claimed the sum of Thirteen Thousand Seven Hundred Forty-One Dollars and Eighty-Seven Cents ($13,741.87) as allegedly due him from the Succession of Doris Dittmar (the mother). The trial judge denied the son’s claim and did not order the executor of the mother’s estate to deliver the sum. The son now appeals. We affirm.
The parties stipulated to the following pertinent facts:
In 1950, Elroy L. Quinn, Sr. (the father) died intestate. He was survived by his spouse, Doris Dittmar Quinn and their five children, one of whom was Clifford. On April 30, 1953 the mother and the children were granted a judgment of possession in the father’s succession. The judgment was subsequently amended to include an additional piece of property which had inadvertently been omitted.
Under the judgment of possession the mother was recognized as the surviving spouse in community. As such, she received an undivided one-half share of the community with a legal usufruct over the remainder. The children received possession of the naked ownership of the decedent father’s share of the community. After the judgment of possession the mother sold certain immovable property jointly with her children.
Later, the estate of the mother sold other immovable property together with the children. The mother died on December 8, 1977. The sales which occurred prior to that date resulted in a total of $58,600.00. After her death, her estate sold the remainder of the property from the father’s succession. The amounts received from the sale of these immovables totaled $77,-000.00.
In the transactions following her death the children signed the acts of sale as full owners; they signed as naked owners for those sales occurring prior to her death. However, no proceeds were ever distributed to the children; either the mother or her estate retained all of the funds which totaled $135,600.00. In addition the cash included in the father’s succession totaled $1,818.65, bringing a total value of the community existing between the mother and the father to $137,418.65. Thus, the children’s total share of the community was $68,709.33. Each of the five children’s share of the community totaled $13,741.87.
Clifford admits that during his mother’s lifetime he received from her advances totaling at least $75,000.00. These advances were evidenced by a promissory note dated May 31, 1972. He did not make any payments on the note. In 1973 the mother sued on the note, but dismissed the suit without prejudice on October 2, 1973.
In order to clarify the issues which are presently before us on appeal we believe that a discussion of the procedural history is in order since we previously resolved some of the issues involved in this succession in Succession of Dittmar, 458 So.2d 163 (La.App. 5th Cir.1984). This is a succession case in which a motion was originally filed by the executor of estate of the mother, requiring one of the sons, Clifford C. Quinn, to collate advances of his share of the active mass of her succession. The *224 son countered by filing a rule to show cause why his portion of his father’s succession should not be delivered to him. The matter was submitted by stipulation on September 16, 1983 and on October 3, 1983 the trial court rendered its original judgment. It placed all parties in possession of the estate of their father pursuant to a judgment which was signed April 30, 1953 and amended on April 16, 1953 and it further required that Clifford collate to his mother’s estate $61,258.13. It also required that the money due the heirs from their father’s estate must be derived from the estate of the mother. From this adverse judgment the son perfected his first appeal to our court.
On October 11, 1984 we ruled on the above matters involving the instant case in Succession of Dittmar, supra. On that occasion we affirmed in part the trial court’s judgment placing the parties in possession of the estate of the father, and further concluding that any monies due the heirs from that estate be derived from the estate of the mother. We further set aside the trial court’s judgment ordering Clifford to collate $61,258.13 as being premature since there had not yet been an homolo-gation. The case was remanded for such an homologation since we could not ascertain at that time whether Clifford owed his mother a succession debt.
Thereafter, on August 2, 1985 Elroy L. Quinn, Jr., the executor of the mother’s succession filed the pleading entitled “Petition Filing Calculation of Active Mass, Including Collation Due by Each Heir and Accounting of Usufructuary, and Proposed Distribution of Funds to Heirs Entitled Thereto to Equalize Portions.” On August 20, 1985 Clifford filed an objection to the petition. The matter was submitted on briefs on December 12, 1985. On December 17, 1985, the trial judge ordered the homologation as calculated by the executor and denied Clifford’s opposition to the ho-mologation. From this adverse judgment Clifford has now perfected his second appeal to this court.
Appellant assigns the following error:
That the trial judge erred in failing to order the Succession of Doris Dittmar Quinn to deliver to him the Sum of Thirteen Thousand Seven Hundred Forty-One Dollars and Eighty-Seven Cents ($13,-741.87) plus legal interest from the date of Mrs. Quinn’s death, which reportedly represents his portion of his father’s, Elroy L. Quinn, Sr.’s succession.
In the “Calculation of Active Mass, Collation, Accounting of Usufructuary and Proposed Distribution of Funds” which was filed by the executor of the mother’s estate and subsequently homologated by the trial judge, Clifford’s legitime from his father’s succession of $13,741.87 was denied him. The executor totaled his share from the mother’s succession of $46,929.62 with his father’s succession of $13,741.87 for a total of $60,671.49. He used the $75,000.00 Clifford admitted as an advance and deducted it from the total amount, leaving Clifford with no portion from his father’s estate or from his mother’s estate.
We note at the outset that we have previously ruled that Clifford is not entitled to legal interest from the date of his mother’s death in Succession of Dittmar, supra and we now adopt our earlier reasoning, to wit:
“ISSUE TWO: LEGAL INTEREST
Because legal interest was not demanded in Clifford Quinn’s ‘Rule to Show Cause,’ Clifford cannot on appeal raise this issue for the first time and receive legal interest on his portion of his father’s succession. Louisiana Code of Civil Procedure article 1921. Louisiana Code of Civil Procedure article 1921 provides:
The court shall award interest in the judgment as prayed for or as provided by law. (Emphasis added)
See Succession of Mulqueeny, 253 La. 595, 218 So.2d 607 (1969).” [Footnote omitted] Succession of Dittmar at 166.
The ultimate issue in the instant case is whether the executor of a succession of one spouse which has funds belonging to the other spouse’s succession, can raise compensation as a defense to an action by *225 a forced heir for his legitime from the pre-deceased spouse.
Clifford admits that he must collate $75,-000.00 to his mother’s succession. Additionally, no one contests the fact that his portion from his father’s succession is $13,-741.87. However, the executor of the succession has raised the defense of compensation so as to avoid delivering the $13,-741.87 to Clifford'.
On August 20, 1985, when Clifford filed his objection to the proposed distribution of funds to the heirs, whereby he was denied his portion from his father’s succession, L.S.A.-C.C. Article 1893 (1985)[1] was in effect. It defines compensation as taking place “by operation of law when two persons owe to each other, sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.” Thus, for a compensation to apply, there must be (1) two debts identical in kind and (2) the debts equally liquidated and due. L.S.A.-C.C. Art. 1893 (1985).[2]
It is critical that for compensation or set off to occur, there must be the contemporaneous existence of distinct debts, equally liquidated and demandable. Hartley v. Hartley, 349 So.2d 1258, 1261 (La.1977). In 4 C. AUBRY and C. RAU, COURS DeDROIT CIVIL PRANCAIS at 243 (La. State Law Institute trans. vol. 1 1965) a liquid debt is defined as “one whose existence is certain and its quantity determined.” [Footnote omitted]. As recited in the stipulated facts, Clifford admits that he has taken advances and is required to collate $75,000.00 to his mother’s succession. He argues, however that this $75,000.00, evidenced by a promissory note dated May 31, 1972, is a debt that is not demandable because it has prescribed. He contends that the prescribed debt is now merely a natural obligation and notes that “[i]n regard to compensation, it seems certain that a natural obligation cannot be set off against a civil one, because in the case of legal compensation ... it would amount to the enforcement of payment which ... is not legally possible^” 6 S. LITVINOFF, LOUISIANA CIVIL LAW TREATISE, Section 327 at 576 (1969).
However, this argument fails to recognize that what Clifford owes is the obligation of collation of advances. “[c]ollation, or the return of property to a succession, is the means by which the law seeks to assure the equal distribution of the ancestor’s property among the direct descendants. [footnote omitted]. It arises from an obligation, or duty imposed upon the heirs by law.” [footnote omitted]. Successions of Webre, 247 La. 461, 172 So.2d 285, 289 (1965). Thus, Clifford is still required to collate the advances to his mother’s succession. L.S.A.-C.C. Articles 1227 et. seq; Succession of Webre, supra.
Furthermore, L.S.A.-C.C.P. Article 424 (1977)[3] provides that “Except as otherwise provided herein, a prescribed obligation arising under Louisiana law may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced.” See also Young v. Fremin-Smith, Inc., 265 So.2d 341 (La.App. 4th Cir.1972).
A determination of whether compensation or set off can be applied in the instant case revolves around the nature of the usufruct. Much of the property owned by the father was immovable. After his death, the mother, as usufructuary over the community property with the consent of her children as naked owners sold four pieces of the property. Since her death, *226 her estate sold the remainder of the community property in the father's succession which consisted of two pieces of immovable property. None of the proceeds of these sales were distributed to the children. Clifford argues that upon his mother’s death he acquired full ownership of his portion of the father’s succession. He argues that his portion never entered the mother’s succession and that it had already been distributed through the father’s succession. Thus, he argues one must recognize the completely independent nature of his action to be given his portion of the father’s succession.
However, this analysis is incomplete. First, it overlooks the nature of the property in the father’s succession. At the time of the mother’s death, part of the property of the father’s succession was in cash and the remainder was immovable property. From 1953, the date on which the mother and the children were placed in possession of the father’s succession until December 8, 1977 when the mother died, she, as surviving spouse in community had usufruct over the children’s portion. L.S.A.-C.C. Article 916 (pre-1982).
During the years following the judgment of possession in the father’s succession through September 13, 1977, the mother acquired the usufruct of the cash from the sales of the immovable property from the father’s succession. L.S.A.-C.C. Article 616 (1977)[4] provides that “[w]hen property subject to usufruct is sold by agreement between the usufructuary and the naked owner, the usufruct attaches to the proceeds of the sale unless the parties provide otherwise.”
Although L.S.A.-C.C. Article 616 (1977) was not in effect[5] at the time of some of the sales of the immovable property, it is not contested that the mother continued to have usufruct over the childrens’ portion of the cash from these sales.
The mother, as usufructuary of the childrens’ portion of the proceeds owed an accounting to deliver the proceeds to them. L.S.A.-C.C. Article 628 (1977).[6]
The children, however, allowed the mother to retain possession of the proceeds. After the mother’s death on December 8, 1977, the estate, together with the children, sold other pieces of immovable property belonging to the father’s succession. The mother’s death had terminated her usufruct over the cash from the previous sales as well as over the remaining immovable property. L.S.A.-C.C. Article 607 (1977).
With regard to the usufruct over the cash which terminated at her death, L.S. A.-C.C. Article 629 (1977) provides in pertinent part that “[a]t the termination of a usufruct of consumables, [defined in L.S. C.-C.C. Article 536 (1977) as ‘those that cannot be used without being expended or consumed’] the usufructuary is bound to deliver to the owner things of the same quantity and quality or the value they had at the commencement of the usufruct.” Moreover, L.S.A.-C.C. Article 538 (1977) provides that the usufructuary over consumable things owes the heirs an accounting.
Since the mother’s succession owed Clifford an accounting and an obligation to *227 pay him his portion of the consumable property, (the sale proceeds) the succession could properly raise compensation as to that portion of the father’s succession.
Moreover, with regard to the non-consumable property which the mother had usufruct over prior -to the date of her death, it appears Clifford became full owner of his portion on the date of her death. The mother’s succession had an obligation to deliver the immovable property since it had possession of the property. However, at the moment of the mother’s death in 1977 compensation did not apply because the obligation to deliver (owed by Mrs. Quinn’s succession) and the obligation to pay (owed by Clifford) are not debts identical in kind. L.S.A.-C.C. Articles 2209 (pre-1985).[7]
We must still consider the effect of Clifford’s joining in the sale of the remaining nonconsumable property after the death of the usufructuary and prior to his demand for his portion of his father’s succession. When this property was converted to consumable property which was administered by the usufructuary’s estate without the objection of Clifford, the two obligations then became debts identical in kind, equally liquidated and due, and, therefore, compensation applies. L.S.A.-C.C. Article 2209 (pre-1985).[8]
Additionally, the conditions of L.S. A.-C.C.P. Article 424 are met since the defense raised by the executor of the obligation to collate advances evidenced by the prescribed note is closely connected with the obligation of the succession to pay Clifford his legitime from his father’s succession.[9]
Moreover, in fairness and in equity there is no way to delineate from whose succession the advances were made. Once the immovable property was converted into cash there was no way to trace these funds since they became commingled.
In Duffourc v. Duffourc, 154 La. 174, 97 So. 391 (1923) the Louisiana Supreme Court in dicta recognized that for a son to be given advances from the mother from the pre-deceased father’s succession without providing for a return (in that instance by an agreement to collate the funds to the father’s succession) would constitute a “double payment” on his part. We feel that the compensation articles as well as a sense of equity dictate that Clifford be denied the $13,741.87 from his father’s succession.
Accordingly, for the reasons stated herein the judgment is affirmed.
AFFIRMED.

. L.S.A.-C.C. Article 1893 (1985) does not change the prior law on compensation which was contained in L.S.A.-C.C. Articles 2207, 2208 and 2209.

. Id.

. Although L.S.A.-C.C.P. Article 424 underwent revisions in 1976 and 1977 it consistently provides for the use of a prescribed obligation as a defense. The changes prohibit its use in "[a] prescribed cause of action arising under The Federal Consumer Credit Protection Act.” L.S. A.-C.C.P. Art. 424 (1977) and the prescribed defense of redhibition to a suit on a negotiable instrument. L.S.A.-C.C.P. Art. 424 (1976) and L.S.A.-C.C.P. Art. 424 (1977).

. On January 1, 1977, approximately one year prior to the mother’s death L.S.A.-C.C. Article 616 was enacted. Prior to that date, Louisiana jurisprudence gave little guidance as to the disposition of the undistributed proceeds of a sale. See Bauman v. George, 154 La. 680, 90 So.85 (1923); Succession of Block, 137 La. 302, 68 So.618 (1915).

. Id.

. L.S.A.-C.C. Article 628 (1977) was effective January 1, 1977. It provides in pertinent part that ‘‘[u]pon termination of a usufruct of non-consumables [defined in L.S.A.-C.C. Article 537 (1977) as ‘those that may be enjoyed without alteration of their substance’] ... full ownership is restored. The usufructuary or his heirs are bound to deliver the property to the owner." In the comments following L.S.A.-C.C. Article 628 (1977) the redactors note that "[t]his provision is new. It articulates rules inherent in Articles 625 (first paragraph), 535, and 567 (second paragraph) of the Louisiana Civil Code of 1870. It does not change the law." [Emphasis supplied].

. See footnote 1.

. See footnote 1.

. Although appellant cites Walker v. Villavaso, 18 La.Ann. 715 (Orl.1866) for the proposition that a prescribed debt cannot be used as a defense, the facts in Walker clearly show that the party pleading the defense was pleading such for an action which "was separate from and independent of the notes.” Id. at 717.