EDWIN A. LOMBARD, Judge.
It The Appellant, Bruce Feingerts, seeks review of the district court’s October 31, 2013 judgment denying his Motion to Traverse the Second and Amended Usufructu-ary Accounting, Motion to Traverse the Amended Estimative and Descriptive List of Assets and Liabilities, and Motion to Annul Judgment of Partial Possession and Return of Particular Legacies. Finding that the judgment of the district court was not manifestly erroneous or clearly wrong, we affirm.
The late Maurice and Doris Feingerts (collectively referred to as “the Feingerts”) had three children born of their union: Susan Hackmeier (“Susan”), Bruce Fein-gerts (“Mr. Feingerts”) and Jane Rushing (“the Executrix”).[1] During their marriage, the Feingerts owned a home (“the Property”) located on Bellaire Dr. in Orleans Parish. The Feingerts also owned a 50% interest in a food brokerage company, Specialty Food Sales Co., Inc. (“Specialty Foods”). The remaining half of the company was owned by Simon Pailet, who was the uncle of Maurice Feingerts. Maurice Feingerts died testate in 1967.
Pursuant to the will of Maurice Fein-gerts, he left Susan, the Executrix and Mr. Feingerts all of his separate and community property to be divided equally |2among them. Said legacies were placed in three separate trusts, subject to a lifetime usu-fruct granted to Doris Feingerts (“the Decedent”), who was also named as the trustee of all three trusts. Pursuant to the *1218 Judgment of Possession in the succession of Maurice Feingerts, the assets of his estate, consisted of: 1) his one-half share of the community property, i.e., the Property; 2) an undivided one-half interest in four lots located in Jefferson Parish;[2] and 3) “[a]ny and all property remaining in the name of Maurice P. Feingerts, including, but not limited to, bank accounts, stock, United States Savings Bond [sic], accounts receivable, automobiles, jewelry, and all other movable property of any nature or kind whatsoever.”
The Decedent later sold the Feingerts’ interest in Specialty Foods to Mr. Pailet. She subsequently made a series of personal loans to Mr. Feingerts and, on occasion, his law firm, following an accident wherein he sustained serious injuries.[3] While the total amount of the loans made to Mr. Feingerts by the Decedent is in dispute, it is undisputed that Mr. Feingerts never paid off the entirety of his debt to his mother.
The Decedent, in July 2009, sold the Property, which was flooded in Hurricane Katrina, for $127,000. She sold the Property . individually and in her capacity as trustee. During the same month, the Decedent also executed a will leaving Susan and the Executrix a particular legacy of $250,000 each. The Decedent further expressly stated within her 2009 will that she intentionally left no part of her estate to Mr. Feingerts because of “numerous gifts”, “donations” and | ¡¡“loans” she made to him “over the years”. The Decedent also forgave all debts, owed to her by Mr. Feingerts, but conditioned her forgiveness upon Mr. Feingerts not making any claims against her Succession, such as challenging the validity of her testament or asserting naked ownership claims against her estate or her in her capacity as usufructuary.
On February 23, 2011, the Decedent executed a codicil to her 2009 testament wherein she left Susan and the Executrix a third of the residue of her estate each, with the remaining third being left to Mr. Feingerts’ children. She additionally increased the particular legacies to Susan and the Executrix from $250,000 to $300,000 each. The last significant change made by the Decedent in her 2011 codicil was an acknowledgement that although her estate would owe a usufructuary debt to Mr. Feingerts for his naked ownership interest in the sale proceeds from the Property, she was applying the amount due to him toward his indebtedness to her. She concludes by stating that Mr. Fein-gerts is not due anything from her because his indebtedness to her exceeded her usu-fructuary debt to him.
The Decedent contemporaneously executed an Authentic Act with the aforementioned codicil. Principal statements, relevant to the instant matter, within the Authentic Act include:
1. She sold the Property for $127,000 and that the one-sixth interest of her three children in the proceeds from the sale is $21,166 each;
2. She made numerous loans to Mr. Feingerts between September 1994 and April 2005, totaling $352,300, with the “express condition, understanding, and promise” that he would repay her over time; and
3. She further states that she considers that his indebtedness to her to be *1219 reduced by $30,000 he prepaid and the $21,166 due to him as his naked ownership interest; thus, his indebtedness remained at just over $300,000-
The Decedent passed away in September 2011, and her succession was subsequently opened. In 2012, Mr. Feingerts filed a Proof of Claim principally asserting a claim against the succession of the Decedent in the amount of $103,313.01, which he calculated as the value of his naked ownership interest in the Succession of Maurice Feingerts.
Mr. Feingerts later filed three motions in the succession proceeding: (1) Motion to Traverse the Second and Amended Usu-fructuary Accounting; (2) Motion to Traverse the Amended Estimative Descriptive List of Assets and Liabilities; and (3) Motion to Annul Judgment of Partial Possession and Return of Particular Legacies. After holding a two-day hearing in the summer of 2013, the district court denied all three motions on October 18, 2013. The district court further granted the Executrix’s Petition to Homologate the Second Amended Usufructuary Accounting and Petition for Partial Possession. The instant suspensive appeal followed the denial of Mr. Feingerts’ motion for new trial.
Mr. Feingerts purports to raise 16 assignments of error; however, we find that there are three issues he raises:
1.) the judgment of the district court should be reversed and remanded because newly-discovered documents reveal that the Decedent was unduly influenced in drafting her last testament as well as that she made possible mistakes or committed fraud;
2.) the district court erred by granting the ex parte order approving the amended descriptive list of the Executrix, Jane; and
I r,3.) the district court erred in failing to find that Mr. Feingerts’s debts to the Decedent were not prescribed.[4]
Standard of Review
The court of appeal should not set aside the factual findings of a trial court absent manifest error or unless clearly wrong. See Brewer v. J.B. Hunt Transp., Inc., 09-1408, p. 9 (La.3/16/10), 35 So.3d 230, 237. However, if a court of appeal finds that the trial court committed a reversible error of law or manifest error of fact, the court of appeal must ascertain the facts de novo from the record and render a judgment on the merits. LeBlanc v. Stevenson, 00-0157, p. 3 (La.10/17/00), 770 So.2d 766, 770. Although appellate courts should accord deference to the factfinder, they nonetheless have a constitutional duty to review facts. Id. Because appellate courts must perform this constitutional function, they have every right to determine whether the trial court verdict was clearly wrong based on the evidence or clearly without evidentiary support. Id. Furthermore, “[w]e have previously emphasized the principle that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” In re Succession of Sporl, 04-1373, p. 6 (La.App. 4 Cir. 4/6/05), 900 So.2d 1054, 1058-59.
Undue Influence, Ill Practice, Mistake and Fraud
Mr. Feingerts contends that the judgment of the district court should be *1220 reversed and remanded because documents produced recently during discovery | (-.allegedly reveal issues of undue influence, ill practice, mistake and fraud. He contends that these issues undermine the validity of the Decedent’s 2009 will and 2011 codicil. He avers that, after the judgment at issue was rendered, he filed a petition in the district court raising the issue of undue influence. He further maintains that we should remand this matter to the district court for a decision on the undue influence petition.
Additionally, Mr. Feingerts contends that through discovery in a separate, but related, ease pending before the district court, an e-mail has been produced that allegedly shows that the Decedent did not deposit any of the proceeds from the sale of the Property into the respective trusts of her children.[5]
Lastly, Mr. Feingerts contends that a remand is necessary because very little discovery was done before the district court ruled on his motions. He alleges that none of the key witnesses were deposed. He further avers that the discovery phase has begun in one of the related district court cases, Civil District Court Case No. 2012-7428; consequently, he argues, we should remand this matter to allow depositions to be taken.
We find that Mr. Feingerts’ arguments are not related to evidence that was considered by the district court during the two-day trial. Moreover, the new information he presents to this Court cannot be considered. A court of appeal is a court of review, and is limited in its review to the evidence submitted and entered into the record at the trial court level. Lorbeck v. Lorbeck, 99-1257, p. 5 (La.App. 4 Cir. 5/23/01), 789 So.2d 656, 659; Uniform Rules, Courts of Appeal, Rule 1-3. An appellate court has no authority to consider on appeal facts referred to in appellate briefs, or in exhibits attached thereto, if those facts are not in the record on appeal. Louisiana Workers’ Compensation Corp. v. Genie Industries, 00-2034, p. 3 (La.App. 4 Cir. 11/7/01), 801 So.2d 1161, 1164.
We cannot reverse the district court’s judgment and remand this matter based upon an undue influence petition and newly presented evidence that were not considered by the district court when it rendered the instant judgment. Mr. Feingerts’ arguments do not address how the judgment of the district court is manifestly erroneous or clearly wrong based on the record before us. Additionally, the record does not reflect that he sought a continuance of either of the trial dates in order for more discovery to be conducted. Indeed, he filed a motion .to reset the hearing of his Motion to Annul Judgment of Partial Possession and for Return of Particular Legacies to the succession wherein he requested the July 11th hearing date. Furthermore, the status of discovery in other district court proceedings is not germane to our review of the judgment at issue. For the foregoing reasons, we And this assignment of error is without merit.
Ex Parte Order
Mr. Feingerts next contends that the district court erred by approving the Executrix’s Motion to File an Amended Estimative and Descriptive List of Assets and Liabilities. He avers that the ex parte order of the district court should be | Reversed as the Executrix filed the motion on the eve of trial, which did not give him the opportunity to controvert the debt he is listed as owing to the Decedent.
*1221 The January 2018 Estimative Descriptive List filed by the Executrix showed a net estate value of $1,497,499.18. However, pursuant to the Amended Estimative and Descriptive List, filed on May 16, 2013, the net estate of the Decedent equaled $1,410,255.84.[6] The record, nevertheless, reflects that the both the Estima-tive Descriptive List and the Amended Estimative and Descriptive List are consistent in reflecting that the usufructuary debt owed to Mr. Feingerts as a naked owner of the estate of Maurice Feingerts is “$0.00” “due to his debt to the [D]ece-dent in the amount of $322,300.00 well exceeding the value of his naked ownership interest.” From January 2013, therefore, he was at least on notice that the Decedent alleged that he owed her $322,300. He cannot now claim to be prejudiced by the consistent accounting of the Executrix in the Amended Estimative and Descriptive List.
Furthermore, La. Code Civ. Proc. art. 3137 authorizes the district court to amend the descriptive list at any time. “The court may amend the descriptive list at any time to correct errors therein, on ex parte motion of the person filing it.” La. Code Civ. Proc. art. 3137. The Executrix moved to file the Amended Estimative and Descriptive List to correct the amount of usufructuary debt due to the Executrix and Susan as naked owners consistent with the Second Amended Usufructuary Accounting filed by the Executrix on May 8, 2013. The Executrix |9also sought to include additional estimated attorney’s fees and costs. Considering that article 3137 authorizes the district court to amend the descriptive list at any time to make corrections, we do not find that the district court erred by granting the Executrix’s motion. Thus, we find this argument is without merit.
Prescription
Lastly, Mr. Feingerts argues that the district court erred in denying his motions because the alleged $322,300 debt owed to the Decedent has prescribed. He maintains that because the debt prescribed it cannot be used to offset his inheritance, particularly from his father’s estate.
The objective of usufructuary accounting is to determine the amount of the debt due to the naked owner by the usu-fructuary at the termination of the usu-fruct. 2 La. Prac. Est. Plan. § 8:18 (2014— 2015 ed.). Furthermore, with regard to descriptive lists, La.Code Civ. Proc. art. 3137 provides that a sworn descriptive list of the property of a succession is deemed prima facie correct, but it may be traversed if an interested party believes it is in error. The burden is on the party filing a motion to traverse to show that the descriptive list is in error. In re Succession of Feitel, 05-1482, p. 4 (La.App. 4 Cir. 4/18/07), 958 So.2d 58, 60, writ denied, 07-1046 (La.8/31/07), 962 So.2d 436. Thus, it was Mr. Feingerts’ burden to demonstrate that the alleged debt was not due to his mother’s estate.
The district court explained in its Reasons for Judgment that it was “incumbent upon Mr. Feingerts to prove the inaccuracy of the amended lists.” It further reasoned that he failed to produce credible evidence or testimony that his |indebt to the Decedent could not be offset against any sums due to him from her succession or from the succession of his father. The court also noted that under the terms of the Decedent’s 2009 will and 2011 codicil, and the evidence adduced by the Executrix, these debts “subsisted until the death of [the] Decedent and are sufficiently related to his claims to be offset against any *1222 sums that [the] Decedent or her succession might owe to Mr. Feingerts.” 'We agree.
Citing Oilbelt Motor Co. v. George T. Bishop, Inc., 167 La. 183, 185, 118 So. 881, 882 (1928), Wolff v. Warden, 141 So. 821, 822 (La.App. 2 Cir.1932), and McElroy Metal Mill, Inc. v. Hughes, 322 So.2d 822, 824 (La.App. 2 Cir.1975), Mr. Feingerts argues that it is well settled law that there is no offset if one set of debts is prescribed. None of the above cases, however, pertains to successions and/or usufruc-tuaries.
Additionally, both Mr. Feingerts and the Appellees assert that the holding of the Fifth Circuit in Succession of Dittmar, 493 So.2d 221 (La.App. 5 Cir.1986) bears examining. In Dittmar, Ms. Dittmar had a usufruct over the estate of her deceased husband, which included consumables and non-consumables. During her lifetime, she and her children sold some of the non-consumables, immovable property. Additionally, her son, Mr. Quinn, borrowed $75,000 from her as evidenced by a promissory note, which he never repaid. Id. at 223.
After Ms. Dittmar’s death, her succession filed a petition proposing the distribution of funds to heirs and including collation due by each heir. The executor of Ms. Dittmar’s estate, who was one of her children, sought to offset Mr. |nQuinn’s legitime — owed from his father’s succession — against the debt he owed to Ms. Dittmar. Over the objection of Mr. Quinn, the district court ordered homologation as calculated by the executor. Id. at 224.
The Fifth Circuit affirmed the judgment of the district court holding that Ms. Ditt-mar’s succession could offset the payment owed to Mr. Quinn against what he owed to his mother. The appellate court reasoned that the ultimate issue was whether the executor of a succession of one spouse, which has funds belonging to the other’s spouse’s succession, can raise “compensation” as a defense to an action by a forced heir for his legitime from the pre-deceased spouse. Id. at 224-25. “Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.” La. Civ. Code art. 1893.
Additionally, the appellate court applied La.Code Civ. Proc. art. 424 in holding that the parties’ obligations could be offset. Dittmar, 493 So.2d at 227. “Except as otherwise provided herein, a prescribed obligation arising under Louisiana law may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff.” La.Code Civ. Proc. art. 424. The Court explained that Mr. Quinn’s obligation to collate was closely connected to the succession’s obligation to pay him his legitime.[7] Dittmar, 493 So.2d. at 227. JigThus, it held that the parties’ obligations *1223 to pay each other could be offset. The Fifth Circuit additionally explained that the succession’s obligation to deliver to Mr. Quinn any immovable property over which Ms. Dittmar had usufruct could not be offset by Mr. Quinn’s obligation to pay because the debts are not identical in kind. Id.
In the matter sub judice, Mr. Feingerts avers that there is no offset here because the debts — the obligation to pay and the obligation to deliver — are not identical in kind. He argues that because he did not consent to the sale of the Property, the Decedent still owes him the obligation to deliver the Property. Additionally, he points out that in the instant matter there is not a promissory note evidencing his indebtedness.
The Decedent, by selling the Property, converted her usufruct over a nonconsumable to a usufruct over a consumable, the proceeds of the sale. Thus, her succession has no obligation to deliver the Property to Mr. Feingerts, but her obligation to pay him his naked ownership interest remained. Pursuant to Dittmar, we find that the parties’ obligations to pay each other can be offset because even if Mr. Feingerts’s obligation to pay the Decedent has prescribed it is at least incidental to the obligation he seeks to enforce in this succession. Moreover, because Mr. | isFeingerts admits he still owed his mother money and did not present evidence contesting the amount of his alleged indebtedness, the lack of a promissory note or other instrument reflecting his indebtedness is of no moment.[8] Furthermore, his argument that the succession has to deliver his interest in the Property because its sale was invalid is not properly before us. That issue is being litigated in a separate district court proceeding.
Moreover, we note that the inheritance of the Executrix and Jane would be diminished if Mr. Feingerts’ debt was deemed prescribed and he could still claim a usu-fructuary debt was due. Mr. Feingerts’ position in essence is that he is entitled to receive his naked ownership interest where he has: 1) loaned funds from a usufructuary parent; 2) failed to repay the total loan amount despite agreeing to do so; and 3) waited until the debt prescribed to avoid repayment to the Decedent or her succession. However, it was clearly the Decedent’s intention to leave legacies to her daughters to equal what she had already loaned Mr. Feingerts. We further note that it is unclear whether the Decedent was loaning money to Mr. Feingerts from her own funds or those over which she had usufruct. Regardless, as a debtor and naked owner, he cannot be allowed to deplete the estate of the Decedent or his father. Therefore, based upon the foregoing, we do not find that the judgment of the district court is manifestly erroneous or clearly wrong.
| ^Lastly, Mr. Feingerts’s Exception of Prematurity and Motion to Dismiss Damages Claim for Prematurity or to Remand is denied as moot.
DECREE
For the foregoing reasons, the judgment of the district court is affirmed and the Exception of Prematurity and Motion to *1224 Dismiss Damages Claim for Prematurity or to Remand of Bruce Feingerts is denied as moot.
AFFIRMED; EXCEPTION OF PREMATURITY AND MOTION TO DISMISS DAMAGES . CLAIM FOR PREMATURITY OR TO REMAND DENIED AS MOOT.
LOBRANO, J., Concurs in the Result.

. Jane Rushing is the Executrix of the succession of Doris Feingerts.

. These lots are not at issue in the instant matter and were sold while Mrs. Feingerts was usufructuary.

. In 2002, she sold 3,000 shares of AmSouth stock and gave Mr. Feingerts the proceeds, valuing $63,000, as a "gift". The Decedent thereafter executed a codicil to her March 30, 2001 will wherein she acknowledged the $63,000 gift to Mr. Feingerts and left equalizing legacies to the Executrix and Susan in the amount of $63,000 each.

. Mr. Feingerts also raised the issue that we should grant the motion to enlarge or supplement the record which he filed in this Court. However, this issue is moot as we denied his motion.

. Mr. Feingerts represents that there are cases related to the instant matter that- are pending in the district court, Civil District Court Case Nos. 2012-0732 and 2012-7428.

. The difference in value between the net estate calculations is $87,243.34.

. We recognize that collation is inapplicable in the instant matter, under La. Civ.Code art. 1235, because none of the Decedent’s children are forced heirs and this matter involves loans, not gifts, made by the Decedent.over several years. The right to demand collation is confined to descendants of the first degree who qualify as forced heirs, and only applies with respect to gifts made within the three years prior to the decedent’s death, and valued as of the date of the gift. Any provision of the Civil Code to the contrary is hereby repealed. La. Civ.Code art. 1235. Moreover, collation does not apply to loans made by a parent to a child:
If a parent gives money to a child as a loan with the intent that the money be repaid, that loan cannot fairly be characterized as a gift? or advance of an inheritance for the purposes of collation. Rather, an obligation is imposed on the child to repay the amount borrowed.
Heck v. Heck, 08-0112, p. 6 (La.App. 1 Cir. 10/31/08), 998 So.2d 187, 191.

. The record shows the Decedent, whose mental acuity prior to her death was attested to, kept a meticulous record of Mr. Feingerts' indebtedness. She attached her accounting to a May 6, 2009 affidavit wherein she attested to the accuracy of her record of the dates and amounts of interest-free loans made to him as well as her record of the dates and amounts of repayments she received. Moreover, within the Authentic Act executed by the Decedent she declares that Mr. Feingerts acknowledged the debt and that he made partial payments on the debt, which would have served to interrupt any applicable prescriptive period. La.Code Civ. art. 3464