2016-0356 (La.App. 4 Cir. 12/7/16)

**SUCCESSION OF Betty Jean Badie WATKINS**

**NO. 2016–CA–0356**

Court of Appeal of Louisiana, Fourth Circuit.

December 7, 2016

Kim M. O'Dowd, 4650 General DeGaulle Drive, Suite 100, New Orleans, LA 70131, COUNSEL FOR PLAINTIFF/APPELLANT

Daniel Frazier, Jr., 4242 Government Street, Suite 107, Baton Rouge, LA 70821, COUNSEL FOR DEFENDANT/APPELLEE

(Court composed of Judge Dennis R. Bagneris, Sr., Judge Roland L. Belsome, Judge Rosemary Ledet)

Judge Roland L. Belsome

This appeal arises from an offset ordered against inheritance as a result of damage caused to succession property. The trial court found that the plaintiff had caused damage to immovable property belonging to the succession and ordered that the judgment be applied as a credit against any inheritance due to him in the succession proceeding. For the following reasons, we affirm.

## STATEMENT OF FACT AND PROCEDURAL BACKGROUND

The estate of Ms. Betty Jean Badie Watkins was opened in September 2009. Ms. Watkins's four heirs were initially placed in possession of the estate; but shortly thereafter the decedent's husband intervened, and the parties set aside the judgment of possession. At that time Steven Badie, one of the four heirs, was named the estate administrator. The estate was valued at $146,593.47, the bulk of which came from the immovable property at issue in this case, which was estimated to be worth approximately $130,540. The only estate debt at that time was a mortgage with a balance of $33,430.

As a result of various financial problems over the years, by early 2014 foreclosure proceedings had been commenced on the immovable property. In February 2014, after learning of the danger of foreclosure, Troy Badie entered the home and removed cabinets, appliances, and various fixtures throughout the house. After discovering that Troy Badie had taken these items, the succession administrator filed a motion for the return of the estate property.

Shortly thereafter, in an attempt to avoid foreclosure, the administrator listed

the house for sale "as is." A potential buyer made an offer on the house on February 28, 2014 for $125,000. The offer was accepted by the estate on March 7, 2014. At the time the parties entered into the purchase agreement, the items removed by Troy Badie were still missing from the house. At some time between the offer being made and the motion hearing, Troy Badie returned the missing items to the house.

The motion hearing took place on March 20, 2014. At the hearing, the administrator stated that Troy Badie had "returned and properly reinstalled the cabinets and stove" he took from the house and thus that matter could be dismissed.

The administrator obtained court approval for the sale on May 16, 2014, and the sale closed on July 3, 2014.

On February 26, 2015, at the request of the heirs, the administrator filed an accounting for each of the years from 2009–2014. The accountings remained mostly unchanged for the years between 2010–2013 except for payments made for the maintenance of the estate, including attorney's fees, costs of upkeep, and mortgage payments.

The administrator's accounting for 2014 reflected the sale of the immovable property, which resulted in $81,628.96 in revenue after deduction for the mortgage, commissions, and closing costs. The 2014 accounting also included unliquidated claims, which included the "unauthorized removal of Appliances and Cabinetry from Deceased's home that resulted in unrecovered diminution of sale price."

On May 29, 2015, the succession administrator filed a Motion to Determine Estate Claims (Offsets) Against Individual Inheritances, which was to be personally served on Troy Badie and Brenetta Badie.[1] On July 21, 2015 attorney Robert Rivard enrolled as Troy Badie's counsel of record in the matter. On July 30, 2015, the succession administrator filed a motion to reset the hearing and requested the original motion and the motion to reset be served on Troy Badie's counsel. The hearing was reset to September 15, 2015.

On September 15, 2015, the hearing went forward without Troy Badie making an appearance due to an error by his attorney regarding scheduling.[2] On October 2, 2015, the trial court rendered judgment against Troy Badie in the amount of $11,022.49 for damages to the immovable property and ordered that the judgment be applied as a credit against any inheritance due to him in the succession proceeding.

Troy Badie filed a Motion for New Trial, which was denied. This appeal followed.

## EXCEPTION OF PRESCRIPTION

■ On appeal, Appellant has filed an Exception of Prescription. Troy Badie argues that because over a year had passed between his removal of the items and the filing of the motion, any claim the succession may have had against him for damage to immovable property had prescribed when the motion to determine offsets was filed. However, as the claim by the estate administrator was one to establish judicial offsets against inheritance claims, rather than an action for damage to immovable property, Appellant's exception is denied.

While La. C.C. Art. 3493 provides that an action to recover for damage to immovable property prescribes one year after the

---

1. The claim against Brenetta Badie included money she owed to the succession for mortgage and utility payments. She was ordered to pay $3,296.56, which she has not contested.

2. The hearing transcript reflects that the trial court recognized personal service had been effectuated on Troy Badie's counsel on August 10, 2014.

owner of the immovable knew or should have known of the damage, there is an exception to prescription that applies in this case. La. C.C.P. Art. 424 provides, in pertinent part: "Except as otherwise provided herein, a prescribed obligation arising under Louisiana law may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff." This article has been applied to situations where an estate administrator wished to use a prescribed obligation to offset amounts due to an heir or legatee.

In the recent case, *Succession of Feingerts*, one of three heirs owed a significant debt to the decedent at the time of her death. *Succession of Feingerts*, 2014–0140 (La.App. 4 Cir. 3/18/15), 162 So.3d 1215, *writt denied*, 2015-0754 (La._|₅6/1/15, 171 So.3d 936. In her 2009 testament, the decedent expressly left no part of her estate to the heir, Mr. Feingerts, because of the numerous gifts and loans she had made to him over the years. *Id.*, 2010–0140 at 162 So.3d at 1218.[3] In a 2011 codicil to the testament, the decedent acknowledged that she owed a usufructuary debt to Mr. Feingerts for his naked ownership in his deceased father's estate, but stated that his indebtedness to her far exceeded the value of his naked ownership interest. *Id.*, 2010–0140 at pp. 3–4, 162 So.3d at 1218–19. After the decedent died, Mr. Feingerts filed a Proof of Claim asserting that the $322,300 debt he owed to his deceased mother had prescribed and thus could not be used to offset his inheritance from his father's estate. *Id.*, 2010–0140 at p. 8, 162 So.3d at 1221.

In finding for the estate, the Court in the *Feingerts* case cited to a Louisiana

Fifth Circuit case, *Succession of Dittmar*, which held that under La. C.C. 424 a prescribed obligation could be used as an offset against money owed from a succession where the two obligations are closely connected. *Id.*, 2010–0140 at pp. 12–14, 162 So.3d at 1223–24. (citing *Succession of Dittmar*, 493 So.2d 221 (La. App. 5ᵗʰ Cir. 1986)). The Court agreed with the trial court's finding that the debt owed by Mr. Feingerts was sufficiently related to his claim against the succession to serve as an offset.[4] The Court held that, pursuant to the *Dittmar* case, the parties' obligations could be offset because even if Mr. Feingert's obligation had |₆prescribed it was "at least incidental to the obligation he [sought] to enforce in this succession." *Id.*, 2010–0140 at p. 12, 162 So.3d at 1223.

In this case, the debt owed by Troy Badie to the estate is closely related to his claims against the succession for his inheritance. Troy Badie caused damage to the immovable property that made up the bulk of the estate and the damage he caused led to reduction in the value of the estate. These actions and their cost to the estate are clearly related to his inheritance claim, and as such the debt can be used as an offset even though it may have prescribed. Therefore, Appellant's Exception of Prescription is denied.

## ASSIGNMENTS OF ERROR

Troy Badie presents three assignments of error on appeal. He first claims that the trial court erred in finding that his actions diminished the value of his mother's estate. He next argues that even if his actions did diminish the value of the estate, the trial court erred in its assessment of the damage. Finally he asserts that the

---

**3.** The decedent forgave all of Mr. Feingerts's debts on the condition that he not make any claims against the succession.

**4.** The Court disagreed with Mr. Feingerts's argument that because his obligation to pay and the succession's obligation to deliver are not identical in kind that an offset was improper.

trial court erred in not granting his motion for new trial.

## STANDARD OF REVIEW

■ The standard of review regarding factual findings is whether the trial court was manifestly erroneous or clearly wrong. *Succession of Sporl*, 2004–1373, p. 4 (La.App. 4 Cir. 4/6/05), 900 So.2d 1054, 1058. Despite the deference accorded to the factfinder, a reviewing court has a constitutional duty to review facts and determine whether the trial court's judgment was clearly wrong based on the evidence or a lack thereof. *Id.*, 2004–1373 at pp. 5–6, 900 So.2d at 1058. If the trial court's findings are reasonable in light of a review of the entire record, the court of appeal should not reverse "even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.*, 2004–1373 at p. 6, 900 So.2d at 1059.

## DISCUSSION

■ The first issue on appeal is whether the trial court erred in finding that Troy Badie caused damage to the value of his mother's estate and ordering that his inheritance from the succession be offset accordingly. It is undisputed that Troy Badie entered the immovable property belonging to the estate and removed kitchen appliances and cabinets, bathroom cabinets, and various fixtures throughout the house after he learned that foreclosure proceedings had been commenced. Troy Badie argues that his actions did not cause any real damage to the estate because he returned the items and properly reinstalled them, restoring the house to its original condition.

■ The Louisiana Supreme Court has stated that when property damage is caused by the fault of another person, the property owner is "entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or, at his election, the difference between the value of the property before and after the harm." *Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Serv. Co.*, 618 So.2d 874, 879 (La. 1993). If the property that has been damaged can be adequately repaired, damages are generally measured by the cost of repair. *State v. Louisiana Land & Expl. Co.*, 2012–0884, p. 13 (La. 1/30/13), 110 So.3d 1038, 1047. However, if restoring the property to its original state is not possible, " 'damages are measured only by the difference between the value of the property before and after the harm.' " *Id.* (quoting *Roman Catholic Church, supra*).

At the motion hearing, which was not attended by either Troy Badie or his counsel due to counsel's scheduling error, the succession administrator, Steven Badie, testified that he decided to put the house up for sale in early 2014 because the estate was four months behind on mortgage payments and the bank had instituted foreclosure proceedings.[5] He stated that he learned that the cabinets, appliances, and various fixtures had been removed from the house when he went with the real estate agent to prepare to list it for sale. The agent began showing the house with the missing fixtures and received an offer from a potential buyer for $125,000, which the estate accepted. At some point after the offer was accepted, Troy Badie reinstalled the cabinets, appliances, and fixtures, but by that time it was too late to renegotiate for a higher sale price. Steven Badie testified that he approached the buyer about renegotiating the purchase price, but she refused.

---

5. The record reflects that the decedent's husband and daughter had been living in the house. The husband moved out without notice, and the daughter could not afford to keep up with payments on her own.

At the hearing, the succession administrator called an expert witness to testify as to the calculation of the loss Troy Badie's actions caused. The court qualified the witness as an expert in the field of residential damage appraisal adjustments. The expert testified that she reviewed the photographs of the house before and after the removal of the items and was confident that the appraisal conducted by the succession and admitted as evidence was fair and accurate. The damage appraisal report prepared by Front Field Appraisal estimated the total cost to repair the damage to the immovable property at $11,022.49. The estimate provided that the cost to replace the kitchen cabinets, stove, microwave, countertops, faucet, and to remove and replace the sink would be $5,800. The remaining amount was comprised of costs for repairing the walls, painting, and replacing the other appliances.

The trial court found that the expert report appropriately measured the cost to repair and replace the cabinets, appliances, and fixtures, at $11,022.49. The court ordered that if Troy Badie attempted to collect on his inheritance, it would be reduced by that amount. A review of the record shows that the trial court was not manifestly erroneous in finding that Troy Badie's actions caused damage to the value of the estate. The court was also not clearly wrong in finding the succession had presented sufficient evidence to support its claims for an offset against Troy Badie's inheritance in the amount of $11,022.49 for the damage he caused to estate property.

The next issue on appeal concerns whether the trial court erred in denying Troy Badie's request for a new trial. Troy Badie argues that the court should have granted his new trial motion because of an alleged problem with service and because the judgment was contrary to the law and evidence.

■ Regarding the service allegations, Troy Badie asserts that neither he nor his counsel of record was properly served with the motion to determine offsets. The trial court addressed this issue at the hearing and found no problems with service. Although the sheriff's return for service of the motion was not included in the record, the hearing transcript reflects that Troy Badie's counsel of record was personally served with the motion to determine offsets and claims on August 10, 2014. Additionally, at the hearing on the motion for new trial, the court found that a motion for new trial was not the appropriate procedure to raise the issue of lack of service. Rather, the court provided, the proper procedure to raise such an issue would be through a nullity action, which Troy Badie did not file.

Troy Badie also argues that the court should have granted a new trial on the grounds the evidence presented at the hearing was insufficient.

■ A trial court has great discretion in the granting or denying a motion for new trial, and on appeal the denial of the motion is reviewed under an abuse of discretion standard. *State ex rel. Dep't of Soc. Servs. v. Whittington*, 2015–1118, pp. 12 (La.App. 4 Cir. 5/18/16), 193 So.3d 1234, 1241.

The court denied the motion stating that based on the testimony and evidence submitted at trial the ruling in favor of the succession was correct. A review of the record indicates that the trial court did not abuse its discretion in denying Troy Badie's motion for new trial.

For the reasons set forth above, we deny the exception of prescription and affirm the trial court's judgment against Troy Badie in the amount of $11,022.49.

Additionally, we affirm the trial court's denial of Troy Badie's motion for new trial.

AFFIRMED.